# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH

Hillsborough Superior Court Northern District
30 Spring St./PO Box 2143
Nashua NH 03061-2143

Telephone: (603) 669-7410
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## RECEIPT OF WRIT

Case Name: SHEILA HOLLAND v McLean Communications, Inc., et al
Case Number: 216-2011-CV-00339

The writ in the above-captioned matter was filed with the Clerk of this Court on: May 10, 2011 at 10:35 A.M..

SHEILA HOLLAND or his/her attorney is to attach a copy of this Receipt to identical copies of the original writ and deliver them to the Sheriff or other legally authorized entity for service on McLean Communications, Inc.; Nashua Telegraph; Independent Publications Inc.; Network Publications, Inc.; Sharron McCarthy; Steven Pare. Sufficient copies shall be provided to allow for a service copy for each named defendant and a copy for each officer completing service to complete the return. The return copies shall be filed with the Court in accordance with Superior Court Rule 3.

BY ORDER OF THE COURT

May 10, 2011

John M. Safford
Clerk of Court

(534)

cc: Kenneth J. Barnes, Esq.
8 Green St.
Concord, NH 03301

NHJB-2575-S (02/24/2009)

# The State of New Hampshire

## SUPERIOR COURT

HILLSBOROUGH COUNTY
NORTHERN DISTRICT

( ) COURT
(y) JURY

### WRIT OF SUMMONS

Sheila Holland
18 Garrison Farm Road
Hudson, NH 03051

v.

McLean Communications Inc., et al.
150 Dow Street
Manchester, NH 03101

The Sheriff or Deputy of any County is ordered to summon each defendant to file a written appearance with the Superior Court at the address listed below by the return day of this writ which is the first Tuesday of __June__, __2011__.
MONTH    YEAR

The PLAINTIFF(S) state(s):

See attached Declaration.

and the Plaintiff(s) claim(s) damages within the jurisdictional limits of this Court.

_____                        05/02/2011
INDORSER (sign and print name)                          DATE OF WRIT

Kenneth J. Barnes

**NOTICE TO THE DEFENDANT**

The Plaintiff listed above has begun legal action against you. You do not have to physically appear in Court on the return day listed above since there will be no hearing on that day. However, if you intend to contest this matter, you or your attorney must file a written appearance form with the Clerk's Office by that date. (Appearance forms may be obtained from the Clerk's Office.) You will then receive notice from the Court of all proceedings concerning this case. If you fail to file an appearance by the return day, judgment will be entered against you for a sum of money which you will then be obligated to pay.

Witness, Tina L. Nadeau, Chief Justice, Superior Court.

_____
SIGNATURE OF PLAINTIFF/ATTORNEY

John M. Safford, Clerk
NH Superior Court Hillsborough County
Northern District
300 Chestnut St.
Manchester NH 03101-2490
(603) 669-7410
213-003-3

Kenneth J. Barnes
PRINTED/TYPED NAME

8 Green Street
ADDRESS

Concord, NH 03301/ 603-228-1234
PHONE

THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH COUNTY                               SUPERIOR COURT
NORTHERN DISTRICT

SHEILA HOLLAND

v.

McLEAN COMMUNICATIONS, INC., THE NASHUA TELEGRAPH,
INDEPENDENT PUBLICATIONS INC., NETWORK PUBLICATIONS, INC.,
SHARRON MCCARTHY, STEVEN PARE

Case No. _____

## DECLARATION IN SUPPORT OF WRIT

### Introduction

1. The Plaintiff, Sheila Holland, worked for twelve (12) years as a Senior Sales Representative for Defendant Network Publications, Inc. dba McLean Communications, Inc. and/or for McLean Communications, Inc. (collectively referred to as "McLean"). Ms. Holland worked extremely hard, she put in long hours -- at great sacrifice to herself and her family -- and she was a top performer (if not *the* top performer) among McLean's sales group, year after year.

2. This case arises out of an increasingly hostile pattern of illegal treatment of Ms. Holland by the Defendants. Among their illegal actions, the Defendants refused to pay Ms. Holland the commissions that she had earned. Ms. Holland eventually had to bring the question of unpaid commissions to the New Hampshire Department of Labor ("DOL" or "Department"), which, in

1

approximately November, 2009, made it clear that the Defendants were legally bound to pay Ms. Holland her commissions.

3. While the DOL's pressure did finally cause the Defendants to pay Ms. Holland the commissions she had earned up to that point, the Defendants did not simply adopt a policy of compliance with the law. Instead, the Defendants began a pattern of retaliation against Ms. Holland for having asserted her legal rights. Their retaliation included demeaning her, shunning her, yelling and cursing at her. It also included taking away Ms. Holland's most lucrative sales accounts and reassigning them to other employees.

4. The Defendants continued and intensified their retaliation until they forced Ms. Holland to suffer a breakdown, requiring her to take extended medical leave. She underwent treatment for anxiety, depression, PTSD and other medical conditions, all of which were caused by the work-related stress, loss of income, and humiliation imposed by the Defendants.

5. By the time Ms. Holland was scheduled to return to work from her Short-Term Disability Leave, on February 14, 2011, the Defendants had left her with only a very small group of accounts, a group which included almost none of the lucrative, bread-and-butter accounts that she had developed over the years and that she relied upon to earn enough commissions to support her family. The accounts remaining after the Defendants butchered her portfolio would not have permitted her to earn anywhere near the income she had been earning, nor would they have supported her and her family which, after all, was why she had worked so hard all her career.

## PARTIES

6. Sheila Holland is an individual, residing at 18 Garrison Farm Road, Hudson, NH 03050.

7. Network Publications, Inc., dba McLean Communications, Inc. – sometimes referred to as McLean Communications, Inc. – is the corporation that employed Ms. Holland for twelve years. McLean is located at 150 Dow Street, Manchester, NH 03101.

8. Sharron R. McCarthy is the Publisher/President of McLean. Her office is also located at 150 Dow Street, Manchester, NH 03101.

9. Steven Pare was Ms. Holland's direct supervisor at McLean, responsible for making decisions regarding her work assignments, which accounts would be assigned to her and which would be removed from her. He too is located at 150 Dow Street, Manchester, NH 03101.

10. Independent Publications, Inc. ("IPI") is the parent company of McLean, of Network Publications, and of The Nashua Telegraph. It oversees and controls all of McLean's operations. IPI is located at 945 E. Haverford Rd., Bryn Mawr, PA 19010-3814.

11. The Nashua Telegraph ("The Telegraph") is also owned by IPI. The Telegraph directs all of McLean's corporate policies, budget issues, projections, HR issues, and definitive corporate direction. Sharron McCarthy, the President of McLean, reports to the President of The Telegraph, Terry Williams. The Telegraph's Human Resources Department ("HR") is responsible for all human-resources-related employment issues at McLean

3

(which does not have its own HR Department). In particular, the Human Resources personnel who took action relating to Ms. Holland's employment at McLean were employed by the Telegraph, which is located at Executive Drive, Hudson, NH.

## FACTS

12. Sheila Holland has been actively involved in sales and marketing for more than thirty (30) years. For the last twelve (12) of those years, she worked as a Senior Sales Representative for McLean. Ms. Holland was initially recruited by Ms. McCarthy to assist in the launch of New Hampshire Magazine. As in her prior jobs, Ms. Holland worked extremely hard, she put in long hours – at great sacrifice to herself and her family – and she was a top performer (if not *the* top performer) among McLean's sales group, year after year.

13. In 2001, McLean converted Ms. Holland from a salaried position – which also earned some commissions for sales volume – to a purely commission-based position. This meant that Ms. Holland would earn no income at all if she was unable to sell enough ads in the company's products. Putting her nose to the grindstone, Ms. Holland successfully built up a book of business that consistently earned her well over $100,000 annually, sufficient to be financially able to support her family. She achieved her portfolio of loyal customers through a combination of hard work, great knowledge about the industry (based on her long experience and hard work), and meticulous customer service including paying careful attention to the customers' needs

and creatively developing ways to further them in light of the options available.

14. In 2003, New Hampshire Magazine/McLean Communications selected Ms. Holland as "A Remarkable Woman of the Year."

15. Prior to November 2009, McLean's longstanding policy had been to allow a sales representative who had built a relationship with a customer and who had signed that customer to one or more 12-month advertising contracts – to keep that customer and thus to receive commissions on ads placed by that customer during all 12 months of the contract and beyond.

16. Moreover, under that same policy, McLean presumptively left that customer in the same sales rep's hands in future years. This way, the sales representative – who had worked continuously to build a business relationship with that customer and to design and recommend an advertising package that suited the customer's unique needs – could often sign the customer to renewal contracts, and additionally could optimize "upsell"/revenue-increase opportunities.

17. This would help McLean's profitability while at the same time helping the sales rep to be compensated for the continuing fruits of her labor, in particular for the extent to which the customer would become a "loyal" customer of McLean's and of Ms. Holland's. Thus, as a result of committed client relationships nurtured by Ms. Holland, these "loyal" customers would commit to continuing and growing their investment in McLean's products and marketing opportunities.

18. McLean's management had told Ms. Holland again and again: "The better your sales, the more money you'll make," with the goal of building, year over year, an increased client base and increased sales revenue.

19. All this began to change in November 2009. At that time, McLean unilaterally, without reason or warning, told Ms. Holland that it was taking away one of her most lucrative advertising accounts – Bacardi Rum Company, and giving that client to another sales representative. McLean made its decision without consulting Ms. Holland in any respect. Not only did McLean refuse to seek any input from its best-performing employee, the company did not offer any legitimate explanation of the reasons for its decision, which it knew would significantly diminish Ms. Holland's income.

20. Ms. Holland stood up for herself, and complained that this was unfair: she had worked hard over many years to cultivate this client, persuading the client of how much it would benefit by purchasing ads in McLean magazines, then convincing them to participate in a long-term contract of monthly advertising, and servicing them to the point where they would regularly renew their contract. Yet now McLean was going to take away the fruits of all her labor, and transfer those fruits to someone who had done none of the work to secure this client.

21. McLean would not change its decision, and so Ms. Holland felt she had no choice but to ask the New Hampshire Department of Labor ("DOL" or "Department") if McLean's action was legal. The Labor Department, of course, made it clear that McLean was legally bound to pay Ms. Holland her

commissions, at least for contracts that Bacardi and McLean had already entered into pursuant to McLean's then-existing employee-commission policy.

22. When it received the Labor Department's determination, McLean relented and paid Ms. Holland the commissions she had earned.

23. But McLean did not simply mend its ways and adopt a policy of paying its employees all wages due them. Instead, the company began a pattern of retaliation against Ms. Holland for having asserted her legal rights. Sharron McCarthy, the President of McLean, became more and more overtly hostile to Ms. Holland, finding every opportunity to undermine her (for example, by demeaning her when, at staff meetings, Ms. Holland made helpful suggestions to improve sales), to sabotage her work (including by speaking ill of Ms. Holland to her clients and others in the industry), and to show as much contempt and disrespect for Ms. Holland as she could.

24. Ms. Holland tried to take the high road to defuse the hostility she felt coming at her from Ms. McCarthy and the other Defendants. In June 2010, she asked Ms. McCarthy for an opportunity to discuss their working relationship, with a view toward improving the work environment and hence productivity. At their meeting, instead of working cooperatively to improve the situation, Ms. McCarthy yelled and swore at Ms. Holland, and told her that she was "the most F---ing litigious B___" that Ms. McCarthy had ever met. This was clearly a reference to Ms. Holland's communication with the NH Department

of Labor: that was the only action Ms. Holland had taken that could conceivably be called "litigious." See ¶ 21-22, supra.

25. At the same meeting, Ms. McCarthy also stated that she "hated everything about" Ms. Holland. In short, Ms. McCarthy made it clear that she thoroughly resented Ms. Holland for insisting that McLean pay her the money that she had worked so hard to earn, and for having the courage to seek help from the Labor Department in order to attain that goal when McLean refused to meet its legal obligations.

26. In the months after the June meeting in which Ms. Holland had tried to clear the air, McLean and Ms. McCarthy did not end their illegal treatment of Ms. Holland. Instead, the Defendants ratcheted up their retaliation against her. In July 2010, soon after that meeting and Ms. McCarthy's tirade, McLean posted a blind ad on Craig's list seeking a replacement for Ms. Holland's position.

27. In addition, the Defendants disciplined Ms. Holland for minor actions or mistakes that are common to all other sales reps, but for which none of the other sales reps received even a word of criticism. The Defendants disciplined Ms. Holland for fabricated infractions, based on erroneous assertions of fact. They redoubled their efforts to take away her valuable accounts which, of course, means depriving her of any income for the work McLean kept asking her to perform.

28. In the fall of 2010, the Defendants pushed Ms. Holland to increase her efforts to renew customers' FY 2011 multi-month advertising contracts. Ms. Holland

8

did so. She continued to work diligently to re-sign this core business, to convince her accounts to renew their 12-month contracts.

29. All along, unbeknownst to Ms. Holland, the Defendants intended to reassign these lucrative accounts to other sales reps once Ms. Holland had re-signed them. Sure enough, within a couple of months of these renewals, the Defendants transferred those accounts to other sales reps, even though Ms. Holland had done all of the work to get the contracts signed. Then the Defendants paid her very little in commissions for securing those ads.

30. By refusing to pay Ms. Holland for the commissions that she worked to earn, McLean has failed to pay Ms. Holland "all wages due" as required by RSA 275:43, I.

## FIRST CAUSE OF ACTION

## BECAUSE MS. HOLLAND WAS NOT PAID "ALL WAGES DUE" HER, THIS COURT SHOULD ORDER THE EMPLOYER TO PAY HER THOSE WAGES, PLUS LIQUIDATED DAMAGES AND ATTORNEY'S FEES AND COSTS

### I.A. THE DEFENDANTS MUST PAY MS. HOLLAND THE VALUE OF ALL UNPAID VACATION TIME THAT SHE EARNED

31. Ms. Holland repeats and realleges the allegations made in ¶¶ 1-30, supra.

32. At the time of her constructive termination, Ms. Holland had accrued many days' worth of earned vacation time. The Defendants were required to pay her the value of that earned vacation time but has, to date, not done so.

33. Thus, the Defendants have failed to pay her "all wages due," in violation of RSA 275:43, I.

34. This Court should order the Defendants to pay Ms. Holland for the value of the unpaid vacation pay that she had earned, as of the time of her termination, in an amount within the jurisdictional limits of this Court.

### 1.B. THE DEFENDANTS MUST PAY MS. HOLLAND FOR ALL UNPAID COMMISSIONS THAT SHE HAS EARNED

35. Ms. Holland repeats and realleges the allegations made in ¶¶ 1-34, supra.

36. As described therein, the Defendants refused to pay Ms. Holland for all commissions that she had earned. Indeed, they took away approximately 60% of her commissions when they removed many of her customers and gave them to other sales representatives.

37. The Defendants' failure to pay Ms. Holland "all wages due" violates RSA 275:43, I.

38. Said actions caused significant financial damage to Ms. Holland.

39. This Court should order the Defendants to pay Ms. Holland the value of her unpaid wages/commissions in an amount within the jurisdictional limits of this Court.

40. She is also entitled to liquidated damages and attorney's fees. See Demers Agency v. Widney, 155 N.H. 658 (2007).

### SECOND CAUSE OF ACTION

### MS. HOLLAND SHOULD BE AWARDED LIQUIDATED DAMAGES

41. Ms. Holland repeats and realleges the allegations made in ¶¶ 1-40, supra.

42. In addition to ordering the Employer to pay her now the compensation that it should have paid her over the past year and one-half, Ms. Holland also

respectfully requests that this Honorable Court order the Employer to pay liquidated damages in an amount equal to the unpaid wages. See RSA 275:44, IV. Such liquidated damages are appropriate where, as here, the "employer willfully and without good cause fails to pay an employee's wages." Id.

43. Thus, in addition to payment of all wages due but not paid, Ms. Holland is entitled to liquidated damages. See id.; RSA 275:53; Demers Agency v. Widney, 155 N.H. 658 (2007).

### THIRD CAUSE OF ACTION

### MS. HOLLAND IS ENTITLED TO BE AWARDED THE ATTORNEYS' FEES AND COSTS NECESSARY TO PROSECUTE HER WAGE CLAIM

44. Ms. Holland repeats and realleges the allegations made in ¶¶ 1-43, supra.

45. The New Hampshire Wage and Hour Law, RSA 275:53, III, states: "The court in any action brought under this subsection may, in addition to any judgment awarded to the plaintiff..., allow costs of the action and reasonable attorney's fees, to be paid by the defendant." Ms. Holland respectfully requests that this Honorable Court exercise its discretion in this case to award her the attorney's fees and costs she was forced to expend in order to get her Employer to pay her the wages that it has, to date, still not paid.

### FOURTH CAUSE OF ACTION

### (VIOLATION OF LAB 803.03 – NOTICE OF CHANGES IN WAGES)

46. Ms. Holland repeats and realleges the allegations made in ¶¶ 1-45, supra.

47. By making a change in Ms. Holland's compensation without first providing a written notice about the change, McLean violated one of the rules established as part of

New Hampshire's protective legislation governing wages and hours. See Lab 803.03 (An employer is required to put wages and benefits in writing at the time of hire and prior to any changes.). Thus, McLean's November 2009 change in Ms. Holland's wages and benefits was not valid because the employer had failed to put the change in writing.

48. The Defendants' illegal change caused damage to Ms. Holland in an amount within the jurisdictional limits of this Court.

## FIFTH CAUSE OF ACTION

## (WRONGFUL TERMINATION UNDER NEW HAMPSHIRE COMMON LAW)

49. Ms. Holland repeats and realleges the allegations made in ¶¶ 1-48, supra.

50. By taking away most of her lucrative client accounts, the Defendants essentially offered Ms. Holland the opportunity to return to work after her Short-Term Disability Leave, but only if she would work without pay. With all of her previous customers taken away, she would have to start from scratch, recruiting new customers and trying to bring them into McLean's customer base. Said actions constituted a constructive termination.

51. That termination was wrongful under New Hampshire common law, because it was based on her having taken actions that public policy would support (including insisting that she be paid for her labor and complaining to the Department of Labor when she was not) and her having refused to take actions that public policy would discourage (including accepting work without pay and/or remaining silent when her employer tried to withhold wages that she had earned).

52. The Defendants' wrongful termination of Ms. Holland caused her damages in an amount within the jurisdictional limits of this Court.

### SIXTH CAUSE OF ACTION

### (RETALIATION – THE DEFENDANTS WRONGFULLY TERMINATED MS. HOLLAND IN RETALIATION FOR HER HAVING COMPLAINED TO THEM AND TO THE NH DEPARTMENT OF LABOR ABOUT THEIR REFUSAL TO PAY HER ALL WAGES DUE)

53. Ms. Holland repeats and realleges the allegations in ¶¶ 1-52, supra.

54. A substantial part of Defendants' motive in constructively terminating Ms. Holland was to retaliate against her for challenging their refusal to pay all wages due. Because Ms. Holland complained to them and to the NH Department of Labor about the Defendants' decision to withhold commissions that were "due" Ms. Holland, the Defendants engaged in a series of retaliatory actions, including maltreatment, removing even more of her lucrative customer accounts, denying her commissions earned on ads placed by those accounts, and, eventually, making her employment life so miserable that no reasonable employee would continue working under those conditions.

55. This constituted a constructive termination.

56. This termination, based as it was on a retaliatory motive, violated the federal Fair Labor Standards Act, See 29 USC § 215(a), and New Hampshire's Employee Protection Laws, RSA 275-E.

57. Said actions caused damage to Ms. Holland in an amount within the jurisdictional limits of this Court.

## SEVENTH CAUSE OF ACTION

## THE DEFENDANTS VIOLATED THE NEW HAMPSHIRE (AND THE FEDERAL) WHISTLEBLOWER ACT

58. Ms. Holland repeats and realleges the allegations in Para. 1-57, supra.

59. The Defendants have retaliated against Ms. Holland – by actions ranging from maltreatment to taking away her most lucrative clients to constructively terminating her – because she blew the whistle on their illegal practices and took actions to force them to comply with their legal and contractual obligations.

60. The Defendants' actions violated federal and state whistleblower laws. See 29 USC § 215(a); RSA 275-E.

61. Said actions caused damage to Ms. Holland in an amount within the jurisdictional limits of this Court.

## EIGHTH CAUSE OF ACTION

## THE DEFENDANTS DISCRIMINATED AGAINST MS. HOLLAND ON THE BASIS OF AGE, IN VIOLATION OF THE FEDERAL ADEA AND THE NEW HAMPSHIRE HUMAN RIGHTS LAW, RSA 354-A

62. Ms. Holland repeats and realleges the allegations in Para. 1- 61, supra.

63. A substantial part of the motivation for the Defendants' actions toward Ms. Holland was based upon her age. Ms. Holland is 50 years old, and within the class of individuals protected by the federal and state laws against age discrimination.

64. To the extent the Defendants claim that their actions were motivated not by her age but by Ms. Holland's higher earnings, it is well established that older

14

and more experienced workers earn more income than younger and less experienced workers, and that this correlation requires that earnings disparities be considered as a proxy for age in employment cases such as this.

65. The Defendants' discriminatory actions caused Ms. Holland damages in an amount within the jurisdictional limits of this Court.

## NINTH CAUSE OF ACTION

## THE DEFENDANTS HAVE ENGAGED IN A PATTERN AND PRACTICE OF DISCRIMINATING ON THE BASIS OF AGE, IN VIOLATION OF THE FEDERAL ADEA AND THE NEW HAMPSHIRE HUMAN RIGHTS LAW

66. Ms. Holland repeats and realleges the allegations in Para. 1- 65, supra.

67. The Defendants have acted in a similarly age-discriminatory way toward other employees and former employees, as well as toward Ms. Holland. Their actions have formed a pattern and practice of age discrimination, in violation of the federal Age Discrimination in Employment Act and the New Hampshire Human Rights Law.

68. Said actions caused damage to Ms. Holland in an amount within the jurisdictional limits of this Court.

WHEREFORE, the Plaintiff, Sheila Holland, respectfully requests that this Honorable Court:

A.   Issue an order determining and declaring that the Defendants have willfully failed to pay Ms. Holland "all wages due" her;

B. Order the Defendants to fairly compensate Ms. Holland and to make her whole for the damages they have forced her to endure. Such damages should include, at a minimum, the following:

1. Pay Ms. Holland all unpaid wages including:

   (a) the value of her unpaid earned vacation time; and

   (b) her unpaid commissions;

2. Back pay, beginning on the date Ms. Holland was constructively terminated (February 14, 2011) until the date of the Court's final order in this case;

3. Front pay from the date of the final order for five (5) years into the future;

4. Back pay and front pay shall be calculated at the average of Ms. Holland's earnings for the period December 1, 2008 through November 30, 2010;

5. Compensation for the physical and emotional pain and suffering that Ms. Holland was forced to endure as a result of the Defendants' illegal actions (in an amount within the jurisdictional limits of this Court);

C. Order the Defendants to pay Ms. Holland liquidated damages in an amount equal to the unpaid wages due (vacation time and commissions);

D. Order the Defendants to pay Ms. Holland her attorneys' fees and costs in bringing this action;

E. Order the Defendants to pay Ms. Holland enhanced compensatory damages in an amount within the jurisdictional limits of this Court;

F.  Order the Defendants to pay punitive damages in an amount within the jurisdictional limits of this Court;

G.  Order the Defendants to pay interest on all moneys owed under the Court's order;

H.  Order the Defendants to pay all of the required amounts to Ms. Holland within seven (7) days of the date of the Court's order;

I.  Issue an order requiring the Defendants to take action to ensure that this ongoing pattern of illegal treatment of employees like Ms. Holland cease immediately and not recur in the future;

J.  Order the Defendants immediately to designate any property that they own or control; and

K.  Grant such other relief as may be just and proper.

Respectfully submitted,

**SHEILA HOLLAND**

By Her Attorneys,

**Law Office of KENNETH J. BARNES**

Date: May 3, 2011          By: _____
                               Kenneth J. Barnes, Esq. (NH Bar No. 9024)
                               8 Green Street
                               Concord, NH 03301
                               Tel: (603) 228-1234
                               Fax: (888) 253-1724